THE SILICA *v.* THE LORD WORDEN and another.[1]

THE LORD WORDEN *v.* THE SILICA and another.

(*District Court, E. D. Pennsylvania.* March 23, 1886.)

COLLISION—NEGLIGENCE—DAMAGES.
  Where a vessel in the tow of a tug runs into another vessel, partly through the negligence of the tug and partly through the improper position of the vessel run into, *held,* that damages and costs could be recovered against both.

In Admiralty.
*Charles Gibbons,* for the Silica.
*Henry R. Edmunds,* for the Lord Worden.
*Alfred Driver* and *J. Warren Coalston,* for the Protector.

BUTLER, J.  As is usual in collision cases, we have here a great mass of conflicting testimony.  The statements of witnesses from the respective vessels are contradictory and irreconcilable, to such extent as to make a satisfactory conclusion difficult of attainment from this testimony alone.  Fortunately the case does not rest on this testimony.  There are several well established facts, about which little if any controversy exists, that furnish a reasonably safe guide to the truth.

Immediately after the collision the Lord Worden was lying on the range of lights.  Attention was called to this fact at the time, and it was observed by all present.  It is testified to, substantially, by the Lord Worden's witnesses.  Unless, therefore, the Silica's blow changed her location, she was there when struck.  That the blow did not change her location, is shown by the answers of the assessors.  That it would not, must, I think, have been inferred in the absence of this testimony.  The relative weight of the vessels, and the character and position of the blow, seem to forbid any other inference.  The conclusion that the Lord Worden was lying, substantially, on the range of lights is therefore, not only reasonable, but unavoidable.  That this was a fault is equally clear.  She had no occasion to lie there.  As the assessors state, and the chart shows, she could have anchored elsewhere, with safety.  Her anchorage there, directly on the track of navigation, after night, was a plain violation of law and duty; and this fault contributed immediately to the disaster.  It is not important, in this respect, that the tow might have passed safely by the exercise of such care as the occasion required.  But for the ship's fault, the disaster would not have occurred,—would have been virtually impossible.  Had she been anchored to one side, as she should, no danger would have been encountered, for the tow was moving, virtually, on the range.

[1] Reported by C. B. Taylor, Esq., of the Philadelphia bar.

Was the tug also in fault? Whether the Lord Worden's lights were up, and of usual brightness, need not be considered. Without lights she could probably have been seen a mile away. She was seen, as is admitted, in ample time to avoid collision. That the tug did not change her course immediately on coming within view is clear. That she was running directly for the ship, or virtually so, is manifest from the fact that she changed her course *five points*, 56 degrees,—an extent of variation wholly unnecessary, and improper, if her original course was to one side of the ship. That she negligently continued the original course until within dangerous proximity, is equally manifest from the fact that her change when made was as abrupt and great as possible,—the turn as nearly at right angles as she could make it. The first order to her wheelsman and tow, was "hard a-starboard." Nothing but the presence of actual danger would have justified, or even suggested, such an order. The weight of the direct testimony is to the same effect,—that the order was given when near the ship. The change, moderate in extent, should have been made higher up, — immediately on discovering the obstruction. The character of the tow,—its make-up,— though not unusual or improper, was such as to render it difficult of control, (especially on an ebb tide,) requiring unusual care in an obstructed channel. The tug should therefore have proceeded with caution, on discovering the ship in her way. Instead, she neither slackened her speed nor changed her course until so near that danger was manifest, when, in apparent alarm, she put her wheel hard down,—sheering as nearly square off as possible, —swinging her tow in the direction of the ship, where its momentum must carry it nearer.

It looks as if the tug ran down as she did, to speak the ship,—possibly with a view to further employment. That she did approach near enough to do so, and did speak her, is clear; and the answer received though irrelevant to the question, is very significant: "Keep off; keep off." Up to this moment she had held her course, and was then so near as to alarm the lookout, who gave this warning. As if appreciating the danger, she then immediately sheered to the full extent of her capacity. The tug was therefore also in fault.

Was the Silica in fault? If Ludwig Dorsch, her wheelsman, is believed, she was. He says he put the wheel to *port*, thus sheering towards the ship. Whether this would be a material fault, if it existed, in view of the situation and the answer of the assessors, need not be considered. I do not believe him. The character of the man; his act of running off with his employer's money in his pocket; the peculiar circumstances under which he was brought back, and his testimony obtained,—forbid that any weight should be attached to what he has said. He is not corroborated. It is true that one or two witnesses say the Silica seemed to sheer westward; but, as the assessors and Capt. Shackford and Lieut. Wykoff state, she would appear to do this momentarily, under the influence of her hawser,

even with her wheel to starboard. As the Gulnare's stern swung westward in coming around, in obedience to her helm, she would necessarily give the Silica's head the appearance, at least, of turning in that direction. It may be said the Silica was in fault for employing such a man as Dorsch. He appears, however, to have been reasonably competent for his duty, and to have discharged it properly down to this point.

Aside from this man's testimony, I find no evidence of fault in the Silica. It was her duty to keep off the ship if she could. I believe, however, she could not. Following in the wake of the Gulnare, with the ship directly ahead, or virtually so, she could not see it until the Gulnare sheered. I am not unmindful of the testimony that the ship was seen slightly off the starboard bow of the vessel ahead. So much depends, however, in this respect, on the place where the observer stood, and upon the heading of the vessel at the moment, that this testimony is not entitled to much weight. "Slightly off the starboard bow" signifies very little. As already stated, the abrupt and remarkable departure from her course, by the tug, leaves no doubt that the ship was nearly, if not quite, directly ahead, and very close. Seeing the Gulnare sheer, it was her duty to follow gradually, taking care not to interfere with the movements of that vessel. Pursuing this course,—the only one allowable,—the collision seems to have been inevitable. The abrupt sheer of the tug so near the ship would necessarily swing the tow around across the channel, and before the Silica could be straightened up and pulled off by her hawsers, the momentum would carry her so far down as to render escape impracticable. The testimony shows that the Gulnare passed the ship much closer than the tug. The cause which thus carried the former closer than the tug, would operate, even in a greater degree, against the Silica, as the assessors state. She, it seems probable, would pass at least as much closer to the ship than the Gulnare, as the latter did than the tug.

The effect of sheering as the tug did; the duty of the vessels in tow, under the circumstances; the influence of the hawsers; the manner in which the vessels would come around; and the probable consequences,—are so fully and intelligently explained by the expert testimony of Capt. Shackford and Lieut. Wykoff, of the United States navy, and particularly by the latter, at pages 90 and 101–104 of the Silica's evidence, and by the answers of the assessors attached hereto, that I desire to call especial attention to this testimony and the answers.

A decree will be entered accordingly.